**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **MANUEL MARTINEZ ZAPATA,** | § | |
|     **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-25-CV-338-KC** |
| | § | |
| **CHARISMA EDGE,** *Warden*, *FCI La Tuna*, | § | |
|     **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Manuel Martinez Zapata, Federal Prisoner Number 38544-510, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1.[1] His opposed petition is dismissed because he failed to exhaust his administrative remedies.

## BACKGROUND

Zapata is a 47-year-old prisoner confined at the La Tuna Federal Correctional Institution in Anthony, Texas, which is within the jurisdiction of this Court. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 38544-510, last visited Mar. 13, 2025). His projected release date is January 14, 2031. *Id*.

Zapata is serving a 142-month sentence imposed after he pleaded guilty, pursuant to a plea agreement, to a superseding information charging him with possession with intent to distribute a mixture containing *a detectable amount* of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c). *United States v. Martinez Zapata*, 5:22-CR-122-H-1 (N.D. Tex), Superseding Information, ECF No. 49; *id*., J. Crim. Case, ECF No. 85 (emphasis added). His plea

---

[1] "ECF No." refers to the Electronic Case Filing number for documents filed in the Judiciary's online docketing system. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

agreement explains that Drug Enforcement Administration agents found more than 3,000 fentanyl

pills with a total weight of 324.516 grams in his motel room in Lubbock, Texas:

> In 2022, agents … received information that [Co-defendant] Rebecca Jeanean Davidson and Manuel Martinez Zapata were working cooperatively to distribute fentanyl pills in the Lubbock area. … On November 28, 2022, agents received information from a confidential source that … Zapata and Davidson had a large amount of fentanyl pills and were trafficking them out of room 512 at the Studio 6 Motel in Lubbock. … Agents made consensual contact with Davidson. Davidson admitted that she had fentanyl pills inside her purse and … a firearm in her car. … Davidson also admitted that there were approximately "three k-packs" inside the hotel room at the Studio 6 that she and Zapata had been using. Agents knew from training and experience that a "k-pack" is coded language for 1,000 pills. Davidson confirmed that Zapata had rented room 512 and that they had been using the room for a couple of weeks. … Agents obtained a search warrant for the room and located several thousand suspected fentanyl pills in various locations throughout the room. The suspected fentanyl pills … were submitted to the DEA South Central Laboratory where testing confirmed that they did, in fact contain fentanyl and weighed a total of 324.516 grams.

*Id.*, Factual Resume, ECF No. 53 at 2–4.

In his petition, Zapata claims that Respondent Charisma Edge has improperly disqualified

him from accumulating First Step Act Earned Time Credits. Pet'r's Pet., ECF No. 1 at 1, 3. He

adds that Edge has additionally denied him placement for up to 365 days in a residential reentry

center and six months in home confinement pursuant to the Second Chance Act. *Id.* at 2. He asks

the Court to intervene and order Edge to provide him with all the Earned Time Credits, Good Time

Credits, and Second Chance Credits that he is entitled to receive. *Id.* at 5.

**STANDARD OF REVIEW**

A prisoner may attack "the manner in which his sentence is carried out or the prison

authorities' determination of its duration" through a petition for a writ of habeas corpus under 28

U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a

prisoner must show he is "in custody in violation of the Constitution or laws or treaties of the

2

United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

Zapata does not claim that he exhausted his administrative remedies or that any exception to the exhaustion requirement applies. Instead, he argues that exhaustion is not required "[b]ecause Habeas Corpus under [28] U.S.C. § 2241 is a constitutional right" and "there can be no rule … which would abrogate [it] such as regarding exhaustion of administrative remedies." Pet'r's Pet., ECF No. 1 at 5. He is wrong.

Zapata's argument overlooks the important role of the exhaustion requirement. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37–38 (1972) (citations omitted); *see also Chavez v. Bragg*, EP-09-CV-6-KC, 2009 WL 506549, at \*1 (W.D. Tex. Jan. 21, 2009) (noting that "[e]xhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," and that "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted"; further noting that exhaustion "may produce a useful record for subsequent judicial consideration") (internal citations and quotations marks omitted).

Moreover, the Fifth Circuit has long held that the Bureau of Prisons (BOP) should be permitted to administratively rectify the error if it failed to properly calculate a sentence. *See Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991) (explaining that an agency should be given the opportunity to correct its own errors before a party seeks judicial intervention). "In the event that a

prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'" *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)), *aff'd*, 566 U.S. 231 (2012); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

Consequently, Zapata "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the agency with custody over him. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). A petitioner bears the burden of demonstrating such circumstances.

The Court finds that Zapata has failed to exhaust his administrative remedies or carry his

4

burden of proving the futility of administrative review. *Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Zapata had properly exhausted his claims, the Court would still not grant him the § 2241 relief he seeks.

**B. Zapata's Claim Concerning Earned Time Credits Is Moot**

Zapata asserts that Edge improperly disqualified him from accumulating First Step Act Earned Time Credits (FTCs). Pet'r's Pet., ECF No. 1 at 1, 3.

The First Step Act creates incentives to encourage prisoners to participate in evidence-based recidivism reduction (EBRR) programs and productive activities (PAs). 18 U.S.C. § 3632(d). It gives *qualifying* prisoners the opportunity to earn ten days of FSA Earned Time Credits (FTCs) for every 30 days of successful participation in EBRR programs and PAs. *Id.* § 3632(d)(4)(A)(i). It allows *qualifying* offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments. *Id*. § 3632(d)(4)(A)(ii). It permits *qualifying* inmates to apply FTCs toward prerelease community-based placement in a residential reentry center or home confinement. 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the discretion of the Director, it permits *qualifying* prisoners to apply FTCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

The FSA lists two types of *disqualifying* fentanyl convictions which render a prisoner ineligible to acquire FTCs. 18 U.S.C. § 3632(d)(4)(D). First, where the prisoner "was an organizer,

5

leader, manager, or supervisor of others in the [fentanyl] offense, as determined under the guidelines." *Id.* § 3632(d)(4)(D)(lxviii). Second, where the prisoner is serving a sentence for a fentanyl conviction under 21 U.S.C. § 841(b)(1)(A)(vi) (involving 400 grams or more of a mixture containing a detectable amount of fentanyl) or (B)(vi) (involving 40 grams or more of a mixture containing a detectable amount of fentanyl). *Id.* § 3632(d)(4)(D)(lxvi).

The Supreme Court has held that the word "conviction" refers only to what "'the defendant [was] convicted of'" and not "what the defendant [has] actually done." *Mathis v. United States*, 579 U.S. 500, 511 (2016) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). Because Congress predicated disqualifying prisoners from accruing FTCs based "on convictions, not conduct," the Court looks to the offense of conviction, not to the particulars of the prisoner's behavior. *Mellouli v. Lynch*, 575 U.S. 798, 805 (2015).

Zapata was convicted of violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)—not 18 U.S.C. § 3632(d)(4)(D)(lxviii), 21 U.S.C § 841(b)(1)(A)(vi), or 21 U.S.C § 841(b)(1)(B)(vi). *United States v. Martinez Zapata*, 5:22-CR-122-H-1 (N.D. Tex), J. Crim. Case, ECF No. 85. Consequently, he was not disqualified by the applicable statutes from earning FTCs. He was, however, mistakenly identified as ineligible to receive FTCs by the BOP. Gov't's Resp., Ex. 3 (Decl. of Bertha Tovar), ECF No. 3-4 at ¶ 10.

In response to Zapata's petition, BOP staff members reviewed his conviction and determined that he was eligible to accumulate FTCs. *Id.* & Attach. 3. After his eligibility was updated, BOP staff members requested and received an accurate and current computation of his FTCs. *Id.* & Attach. 4. Zapata's projected release date was also updated to reflect his current FTCs. As a result, his request for an order directing the BOP to change its determination about his

6

eligibility to receive FSA time credits is moot.

### B. Good Time Credits (GTCs)

Zapata asks the Court to order Edge to provide him with all the Good Time Credits (GTCs) that he is entitled to receive. Pet'r's Pet., ECF No. 1 at 5.

Zapata, like any federal prisoner, may earn up to 54 days of GTCs for each year of his sentence. 18 U.S.C. § 3624(b)(1). If he does not lose any GCTs for disciplinary infractions, he is projected to earn up to 530 days of GCTs before he completes his sentence. Gov't's Resp., Ex. 3 (Decl. of Bertha Tovar), ECF No. 3-4 at ¶ 11. Application of these projected 530 GCTs will result in a projected release date on January 14, 2032, without the inclusion of any other time credits. *Id.* & Attach. 1. Zapata has not shown that the BOP failed to accurately calculate his GTCs.

### D. Second Chance Act Placement

Zapata finally asks the Court to order Edge to provide him with all the Second Chance Credits that he is entitled to receive. Pet'r's Pet., ECF No. 1 at 5.

The Second Chance Act provides a prisoner reentering society after incarceration with resources for post-imprisonment rehabilitation services, with the goal of reducing recidivism and enhancing public safety. Pub. L. No. 110-199, 122 Stat. 657. It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate a prisoner and reduce recidivism. *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It also addresses a prisoner's placement in pre-release custody in a community corrections facility such as a halfway house. 18 U.S.C. § 3624(c)(1), (2). It grants the BOP Director the *discretion* to place a prisoner in a community corrections facility for up to twelve months. *Id*. § 3624(c)(1); *Jones v. Bergami*, No. EP-19-CV-254-DB, 2019 WL 4889735, at

7

*3 (W.D. Tex. Oct. 2, 2019). It "makes no mention of federal courts and does not grant any authority to the federal courts" to order a prisoner's placement in in pre-release custody. *United States v. Calderon*, 801 F. App'x 730, 732 (11th Cir. 2020).

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any place including a community corrections facility. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).

Thus, to the extent that Zapata requests placement in an RRC, the Court has no authority under the Second Chance Act to grant the relief he seeks.

## CONCLUSION AND ORDERS

The Court concludes that Zapata has failed to exhaust his administrative remedies. The Court accordingly enters the following orders:

**IT IS ORDERED** that Manuel Martinez Zapata's "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) and his civil cause are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

SIGNED this 13th day of March, 2026.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

9